**Dated: October 11, 2005**
**The following is ORDERED:**



_____
Tom R. Cornish
UNITED STATES BANKRUPTCY JUDGE

_____

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| **HAROLD DEAN SHEPHERD** | ) | Case No. 04-73498 |
| **d/b/a SHEP'S USED CARS** | ) | Chapter 7 |
| | ) | |
| Debtor, | ) | |
| | ) | |
| **MURRY COLBURN** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Adv. No. 05-7001 |
| | ) | |
| **HAROLD DEAN SHEPHERD** | ) | |
| **d/b/a SHEP'S USED CARS** | ) | |
| | ) | |
| Defendant. | ) | |

# O R D E R

On the 31st day of August, 2005, the above-referenced adversary proceeding came on for trial.

Appearances were entered by Clifford A. Wright, Attorney for Plaintiff, and Gerald R. Miller, Attorney for Defendant. Closing arguments were heard telephonically on September 2, 2005. Both parties filed additional briefs on September 9, 2005. After hearing and reviewing the evidence and testimony presented by the parties, this Court does hereby enter its findings and conclusions in conformity with Rule 7052, Fed. R. Bankr. P., in this core proceeding.

Defendant filed for relief under Chapter 7 of the Bankruptcy Code on September 13, 2004. Plaintiff commenced this adversary proceeding on January 3, 2005, objecting to the dischargeability of a debt pursuant to 11 U.S.C. § 523(a)(2)(A) and (a)(4).

Plaintiff alleges from 1999 through the end of 2003, Plaintiff and Defendant had an oral agreement to enter into a business relationship. The Plaintiff would furnish money to Defendant to purchase vehicles. Defendant would then buy the vehicles and sell them through his used car business. The vehicles were titled in Defendant's name. Fifty percent of the profits, plus the cost of the vehicles, were distributed to Plaintiff following sales of vehicles. Plaintiff occasionally paid for some expenses to prepare the vehicles for sale, but he paid no other overhead costs of the dealership. These expenses were borne by the Defendant.

Defendant kept ledger books at the business, however, the original ledger books are no longer in Defendant's possession. Defendant stated at trial that he, Plaintiff, and employees of Defendant all had access to the ledgers for inspection. Defendant does not know where all the original ledger books are located, nor what happened to them. Photocopies of one of the ledgers were admitted as an exhibit at trial.

At some point, the business relationship between Plaintiff and Defendant began to deteriorate.

Plaintiff states that some of the funds he provided for the purchase of vehicles, totaling approximately $65,000, was in fact used to purchase seven vehicles. However, he complains the

2

Defendant pledged those vehicles for loans not connected with the business relationship. These loans turned out to be personal loans from First State Bank ("FSB"), and FSB acquired first liens on the seven vehicles. FSB commenced a lawsuit in the District Court of Cherokee County, Oklahoma, to foreclose on these vehicles. Plaintiff took possession of the vehicles and placed them at various locations throughout Oklahoma. FSB was granted judgment for possession of the seven vehicles and Plaintiff then later delivered the vehicles to FSB.

Plaintiff alleges that Defendant made statements regarding the usage of the funds to acquire vehicles to Plaintiff at a time when Defendant knew the statements were false, and Defendant did not believe they were true. Plaintiff also alleges that Defendant's positive assertions were made in a manner not warranted by the information of Defendant, even though he may have believed them to be true. Plaintiff alleges that Defendant failed to disclose the fact that he had other loans and intended to pledge the seven vehicles purchased with Plaintiff's funds, and that Defendant made promises without any intention of performance.

Plaintiff also avers that Defendant did not note in the ledger on which vehicles FSB had a lien in an effort to hide his activities from Plaintiff. Defendant denies that he failed to disclose to Plaintiff his intention to pledge the vehicles purchased with Plaintiff's funds to FSB for obligations not related to the oral agreement between Plaintiff and Defendant. Defendant further states that Plaintiff was advised of Defendant's intentions, and that he had Plaintiff's permission to pledge the vehicles. Defendant could not recall when this conversation took place.

Plaintiff also alleges that he gave $7,000 to Defendant to buy a Pontiac and Defendant used the funds to pay personal living obligations. Defendant deposited the funds. When Defendant paid the auction company for the Pontiac, the check was returned because of insufficient funds. Plaintiff then gave an

3

additional $7,400 to Defendant to cover the purchase of the Pontiac. Plaintiff alleges damages as a result of this transaction in an amount in excess of $7,464.00.

Throughout their relationship he loaned Defendant an additional $34,300.00 based on Defendant's promise that he would repay this loan from the proceeds he would receive from refinancing his house. Defendant used the loan proceeds for various other purposes, including some past due house payments. However, it is clear that the proceeds from refinancing his home were not repaid to the Plaintiff. Defendant stated at trial that he had other bills to pay, including paying off another mortgage, and did not have sufficient funds left over to pay Plaintiff.

Section 523(a) provides, in part:

> (a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt -
> \*\*\*
>> (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by -
>>> (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition.
>>
>> \*\*\*
>> (4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny.

11 U.S.C. § 523(a)(2)(A) and (a)(4). Exceptions to discharge are generally narrowly construed, with any doubt being resolved in favor of the debtor. *Bellco First Fed. Credit Union v. Kaspar (In re Kaspar),* 125 F.2d 1358, 1361 (10th Cir. 1997).

In order to prevail under § 523(a)(2)(A), the Plaintiff must prove, by a preponderance of the evidence, the debtor made a false representation with the intent to deceive the creditor; that the creditor reasonably relied on the misrepresentation; and the misrepresentation caused the creditor to sustain a loss.

4

*Fowler Bros. v. Young (In re Young),* 91 F.3d 1367, 1373 (10th Cir. 1996). Courts may examine the totality of the circumstances to infer a debtor's intent to deceive a creditor. *Id.* at 1375.

Plaintiff testified that if he had known of FSB's liens he would not have provided the funds for those vehicles, because Defendant would be unable to repay both Plaintiff and FSB. Defendant stated at trial that he intended to pay Plaintiff back for every penny he borrowed from Plaintiff. He further stated that he never intended to cheat or defraud Plaintiff.

This Court cannot conclude from the evidence presented that Defendant intended to defraud Plaintiff when funds were provided to Defendant. Plaintiff attempted to show Defendant's fraudulent intent from notations, or lack thereof, in the ledger. However, Defendant was not the only person who wrote in the ledgers, and the ledgers and titles to the seven vehicles noting FSB's liens were readily available for Plaintiff to examine.

There was no evidence offered at trial that indicated Defendant intended to deceive the Plaintiff while making a false representation. The evidence regarding any actual representations, false or otherwise, was severely lacking. The testimony indicated there was just an "understanding" of the general agreement between the parties. Defendant stated that when he told Plaintiff he would pay him back for the personal loans from refinancing his home, he had every intention of doing so. There was no evidence that showed otherwise. In examining all the evidence, this Court finds that the Defendant did not act with the intent to deceive the Plaintiff, and therefore the Plaintiff has not met its burden of proving fraud on the part of the Defendant.

In order to prevail on a § 523(a)(4) action, the Plaintiff must prove, by a preponderance of the evidence, that (1) a fiduciary relationship existed between the parties and (2) fraud or defalcation was

5

committed by the debtor during the course of the fiduciary relationship. *Antlers Roof-Truss & Builders Supply v. Storie (In re Storie),* 216 B.R. 283, 286 (10th Cir. BAP 1997). The Tenth Circuit, in discussing a fiduciary relationship, noted that it:

> must find that the money or property on which the debt at issue was based was entrusted to the debtor. Thus, an express or technical trust must be present for a fiduciary relationship to exist under § 523(a)(4). Neither a general fiduciary duty of competence, trust, loyalty, and good faith, nor an inequality between the parties' knowledge or bargaining power, is sufficient to establish a fiduciary relationship for purposes of dischargeability.

*Young,* 91 F.3d at 1371-72. The Tenth Circuit has narrowly construed "fiduciary capacity" as set forth in 11 U.S.C. § 523(a)(4). *Merrill v. Merrill (In re Merrill),* 252 B.R. 497, 506 (10th Cir. BAP 2000) (citing *Young,* 91 F.3d at 1371-72)).

Defendant argues that there was no fiduciary relationship between the parties. This Court agrees. Plaintiff is merely an unsecured creditor in this case. Plaintiff made unsecured loans to Defendant. "A debtor does not ... stand in a fiduciary relationship to his or her creditors." *Navarre v. Lune (In re Luna),* 406 F.3d 1192, 1204 (10th Cir. 2005). Furthermore, the Supreme Court has held that a creditor that provided funds for the inventory of an auto dealer did not create a trust relationship for nondischargeability purposes. *Davis v. Aetna Acceptance Co.,* 293 U.S. 328, 55 S.Ct. 151, 79 L.Ed. 393 (1934). In that case, the Supreme Court held that the obligation of the dealer to the creditor was a contractual duty rather than a fiduciary duty. *Id.* at 334, 55 S.Ct. at 154. In this case, this was a handshake or a very loose business relationship. There was never a written agreement; only a course of conduct over a period of a few years. Plaintiff is a savvy and sophisticated business man who was looking for a new venue to get a good return on his investment. He was not solicited by the Defendant. Therefore, this Court finds that

there is no fiduciary relationship between the parties, and having found no fraud committed by Defendant, Plaintiff's argument under § 523(a)(4) fails.

IT IS THEREFORE ORDERED that the debt owed to Plaintiff by the Defendant is **dischargeable.**

###